IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHELLE MCCRAY,

   *Plaintiff*,

   v.                                     Civil Action No. ELH-14-02446

BANK OF AMERICA, CORP.,

   *Defendant*.

**MEMORANDUM OPINION**

Michelle McCray, the self-represented plaintiff, filed suit against defendant "Bank of America, Corp." ("BOA"), arising from her purchase of a home in Baltimore, Maryland in August 2006, with a mortgage loan from lender Countrywide Home Loans, Inc. ("Countrywide").[1]  ECF 2 (Complaint).[2]  According to McCray, BOA purchased Countrywide in 2008 and is Countrywide's successor. *Id.* ¶ 1.  Therefore, BOA is "liable for the illegal practices and actions of Countrywide" as well as its own illegal misconduct. *Id.*

McCray asserts multiple violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"). *See*, *e.g.*, ECF 2 ¶¶ 1, 12.[3]  She alleges:  "Plaintiff has sent several certified inquiries since 2007 (exhibits A-C) to obtain corrections to the loan however there has neither [sic] been no response to specific inquiries, false responses, absolutely no

---

[1] Plaintiff refers to this entity as "Countrywide Home Loans," ECF 2 at 1, while defendant refers to the entity as a corporation. *See*  ECF 11-1 at 1.  I shall use the corporate designation.

[2] McCray filed this action in the Circuit Court for Baltimore City, Maryland in June 2014, along with thirty-five exhibits. *See* ECF 2; ECF 2-1 through ECF 2-35.  BOA removed the action to this Court under 28 U.S.C. §§ 1331, 1332.  ECF 1.

[3] As discussed, *infra*, it is not clear to the Court whether plaintiff intends to assert causes of action in addition to alleged violations of RESPA.

investigations absolutely no corrections to the loan." ECF 2 ¶ 1. Plaintiff also details many allegations of improperly charged fees and inaccurately represented payments. *Id.* ¶¶ 3-36. She requests "an investigation, explanation and corrections line by line of all fees, interest, escrow, principal and modifications added to the loan since [she] obtained the loan in August 2006," *id.* ¶ 1, and seeks to "resolve all unfair and deceptive practices regarding the servicing of [her] loan beginning August 2006 to January 2012." *Id.* Plaintiff also asks that "judgment be entered in her favor for each violation, for loss of time writing and contacting agencies and the Defendant in the amount of $200,000," as well as "loss of rental income in the amount of $23,880" and "court fees." *Id.* at 16.

Now pending is BOA's motion to dismiss (ECF 11, "Motion"), filed pursuant to Fed. R. Civ. P. 12(b)(6). The Motion is supported by a memorandum of law (ECF 11-1, "Memo") and two exhibits. BOA argues that McCray fails to state a claim under RESPA. ECF 11-1 at 2. BOA also contends that the Complaint asserts claims for accounting and breach of contract under Maryland law, but that the Complaint does not allege facts sufficient to plausibly state those claims. ECF 11-1 at 7-8, 13-14. BOA further argues that the "Complaint fails to assert a cause of action for loss of rental income … ." ECF 11-1 at 2.[4]

McCray opposes the motion. ECF 13 ("Opposition"). She states that "at its core" her case is about "unfair and deceptive practices by defendant." *Id.* at 1. For the first time, she states that BOA's alleged practices, *i.e.*, failure "to provide accurate loan information and

---

[4] BOA also asserts that Bank of America, Corp. "is not a proper party to this lawsuit," ECF 11-1 at 1 n.1, and it "reserves the right to raise any and all applicable defenses related to this improper designation … ." *Id.* But, defendant does not assert that defense in the Motion. Rather, defendant states that plaintiff "appears" to contend that "Bank of America, Corp." and/or "Bank of America, N.A. ('BANA'), as successor to [Countrywide]" wronged plaintiff. *Id.* at 1-2. Consequently, defendant "address[es] Plaintiff's allegations for purposes of this Motion as if they were directed at BANA." *Id.* at 2 n.2. The Court will do the same.

records", violate "Section 5(a) of the FTC Act 15 U.S.C. § 45." *Id*. at 1.  Further, she reasserts

that BOA "failed to respond to several qualified written requests (QWR) per RESPA … ."  *Id*.

As discussed, *infra*, plaintiff appears to reject BOA's contention that her Complaint asserts

discrete, common law claims for accounting, breach of contract, and/or loss of rental income.

BOA has replied.  ECF 14 ("Reply").  In its Reply, BOA did not acknowledge McCray's

argument in her Opposition that her Complaint alleges violations of 15 U.S.C. § 45.  ECF 14.

Subsequent to BOA's Reply, McCray filed a "Motion for A Hearing."  ECF 16.  She

states that she "has outlined over 38 unfair and deceptive practices in her complaint" and "prays

that the court will allow the Defendant and Plaintiff to resolve this issue completely and

successfully."  *Id*.  She adds that the U.S. Consumer Financial Protection Bureau ("CFPB")

"instructed" her "to take this matter to court to enforce the following rules:" … "Prompt

Payment Crediting and Payoff Statements (§ 1026.36(c)) …"; "Force-placed insurance rule (§

1024.37)"; and "Notice of Error (§ 1024.35(a))".  *Id*. at 1-2.  However, she does not provide any

reasons as to why the Motion cannot be decided without a hearing.  Defendant opposes

McCray's request for a hearing.  ECF 17.

The defendant's Motion has been fully briefed, and no hearing is necessary to resolve it.

*See* Local Rule 105.6.    Therefore, I will deny plaintiff's Motion for a Hearing (ECF 16).  For

the reasons that follow, I will grant defendant's Motion (ECF 11) in part and deny it in part.

## I. Factual Background[5]

---

[5] I rely on the allegations in the Complaint and the exhibits appended to the Complaint, some of which are expressly incorporated by reference in the body of the Complaint.  *See*, *e.g.*, ECF 2 ¶ 1 (incorporating by reference Exhibits A through C).  As discussed, *infra*, in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may properly consider documents "attached or incorporated into the complaint"  *U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

In August 2006, McCray purchased a home in Baltimore (the "Property") "with Countrywide". ECF 1 ¶ 1. She alleges that BOA "purchased Countrywide in July 2008 therefore [BOA] is the successor of [Countrywide]". *Id.* Moreover, McCray claims that BOA "took over" her mortgage debt "[a]round 2009." *See* ECF 2-1 (complaint submitted to CFPB by McCray) at 1. BOA was both McCray's lender and mortgage servicer from then until January 2012. Effective January 1, 2012, BOA "assigned, sold or transferred" its right to collect McCray's payments to Specialized Loan Servicing, LLC. ECF 2-5 (Notice of Assignment).

It appears that McCray has modified the terms of her loan with Countrywide and/or BOA multiple times. *See*, *e.g.*, ECF 2-32 ("Foreclosure Sale Postponement Agreement" between Countrywide and MccCray dated Nov. 14, 2007); ECF 2-11 at 3-4 (loan modification agreement between Countrywide and McCray, signed Jan. 27, 2008); ECF 2 ¶ 14 (alleging Countrywide offered another loan modification on Dec. 4, 2008); ECF 2-12 (letter dated Dec. 4, 2008, from Countrywide to McCray); ECF 2-8 (letter from BOA to McCray, informing her that her loan modification has been approved, dated May 11, 2009).

McCray's Complaint contains thirty-eight numbered paragraphs and an unnumbered prayer for relief. Paragraph one immediately follows a heading called "INTRODUCTION." Notably, McCray states in the Introduction that she has "sent several certified inquiries since 2007 (exhibits A-C) to obtain corrections to the loan … ." ECF 2 ¶ 1. The introductory statement incorporates by reference Complaint exhibits A through C, and implies that these exhibits are examples of the "certified inquiries" plaintiff has sent since 2007.

Paragraph two consists of one sentence. In its entirety, it states: "In the course of Plaintiff's loan the Defendant has engaged in the following acts and practices[.]" Paragraphs three through thirty-six each begin with a topic phrase or sentence that constitutes a general

description of an alleged wrongful practice.   Paragraph three, for example, begins with the following statement:  "Providing false or misleading loan information and for failing to properly calculate and provide accurate monthly payment calculations."  *See also*, *e.g.*, *id.* ¶ 4 ("Charging unauthorized fees."); *id.* ¶ 5 ("Failure to properly calculate and provide borrower with accurate monthly payment costs."); *id.* ¶ 6 ("Failure to properly calculate and provide borrower with accurate monthly payment costs."); *id.* ¶ 7 ("Excessively imposing several force-placed insurance on Plaintiff's loan, charging excessive fees and acting in bad faith."); *id.* ¶ 8 ("Failure to inform borrower of options to remedy past due amounts, imposing unexplained fees, practicing deceptive foreclosure practices, charging excessive fees and not accurately posting payments.").   I shall refer to these allegations at the start of each paragraph as "prefatory statements."

The prefatory statement in each paragraph numbered three through thirty-six is followed by a question or concern McCray has about a particular charge, payment, or term related to her mortgage debt, and then a request for relief, usually for an explanation or correction.  Paragraph three, for example, states in its entirety:

> 3. Providing false or misleading loan information and for failing to properly calculate and provide accurate monthly payment calculations.  Plaintiff requests an investigation of the amount financed for her loan.  Plaintiff received on 8/30/06 an itemization of amount financed exhibit M1[6] as well as Truth in Lending Disclosure Statement exhibit N1[7] that states amount financed is 102,424.50. Since obtaining the loan the Plaintiff has been told the amount financed was $107,350.00.  Plaintiff requests the correct amount financed when the house was purchased in 2006.  Plaintiff request [sic] the correct amount to reflect as her beginning balance and to show the new monthly payments based on the correct

---

[6] Although paragraph 4 references "exhibit M1," none of the exhibits submitted with the Complaint are labelled M1.  Exhibit M (ECF 2-26) consists of two pages of an account statement from BOA for McCray related to the Property and showing transactions by date.

[7] None of the exhibits submitted with the Complaint are labelled N1.  Like Exhibit M, Exhibit N (ECF 2-27) consists of two pages of an account statement from BOA for McCray related to the Property and showing transactions by date.

loan amount.  Plaintiff request [sic] the difference to be deducted from her principal.

Paragraph four states:

4.  Charging unauthorized fees.  Plaintiff is requesting an investigation, explanation and correction for a MISC Posting, posted in the interest section in the amount of $57.94 on 9/1/2006, exhibit I.  Plaintiff request [sic] $57.94 to be deducted from principal only because it seems that Plaintiff was already charged for this amount as explained on exhibit M1.

In addition to the RESPA violation alleged in paragraph one, *supra*, nine allegations that BOA violated RESPA are sprinkled throughout the Complaint.  ECF 2 ¶¶ 10, 11, 12, 13, 14, 15, 19, 28, 37.  Eight of these allegations are presented in the prefatory statements in eight different paragraphs.  Each prefatory statement alleges, in part, "failure to respond to a qualified written request per RESPA Law Chapter 6."  *Id.* ¶¶ 10, 11, 12, 13, 14, 15, 19, 28.  Yet, only two of these eight paragraphs contain factual allegations that McCray requested information from defendant.  *Id.* ¶¶ 11, 12.

Paragraph eleven states (emphasis added):

11.  Failure to properly calculate and provide borrower with accurate monthly payment costs.  Failure to respond to a qualified written request per RESPA Law Chapter 6.  Plaintiff is requesting an investigation of calculations used to figure interest and principal payments in the amount of $1080.97 as described in exhibit K.  In 2008, amounts going to principal was $70.62 while as much as $1015.50 went to interest.  *Plaintiff sent this request to Defendant and Defendant failed to investigate the breakdown of these costs*.  Plaintiff requests all calculation errors to be deducted from principal only.

Paragraph twelve states, in relevant part:

12.  Failure to explain excessive fees and failure to respond to a qualified written request per RESPA Law Chapter 6.  After signing the modification exhibit F, Plaintiff sent the documents to the Defendant along with a letter.  The letter explained her issues with the $16,768.89 added to the back of her loan.  Plaintiff also requested an explanation of the fees and stated she was signing the documents to save her home and with confidence someone will get back with her to discuss these concerns.  Plaintiff never received a call, correspondence,

explanation nor any corrections to the $16,768.89 posted to the back of her loan. …

Plaintiff's Exhibit F (ECF 2-11), referenced in paragraph twelve of the Complaint, is a letter from Countrywide to McCray dated January 9, 2008, informing McCray that her "loan modification has been approved."  *Id.* at 1.  It contains her name, address, and a nine-digit loan number. *Id.*  It also outlines the terms of the loan modification.  *Id.*

Paragraph thirty-seven contains the Complaint's final RESPA allegation.  It states: "Plaintiff sent several inquiries to Countrywide, Bank of America, The Office of the Comptroller of the Currency and the [CFPB] to resolve these concerns since 2007.  Plaintiff asked detailed questions regarding her loan and Defendant failed to respond to all questions and never resolved questions or concerns from Plaintiff."

As stated, plaintiff also submitted with her Complaint three exhibits (A, B, and C) that plaintiff believes constitute "qualified written requests" under RESPA.  ECF 2 ¶ 1; ECF 2-1 (Ex. A); ECF 2-3 (Ex. B); ECF 2-6 (Ex. C).

The text at the top of plaintiff's Exhibit A is an undated message from Paulette Dearmyer, a "Customer Advocate" with Bank of America, N.A.  ECF 2-1 at 1.  It states, in part: "This letter is in response to your correspondence forwarded by the [CFPB] to Bank of America's Office of the CEO and President on February 2, 2012."  *Id.*  It informs McCray that the bank began reviewing "the concerns raised in [McCray's] correspondence," and that it expected to conclude its review within forty-five days.  *Id.*

Below this message, on the same page, Exhibit A contains a long, single-spaced paragraph under the heading "WHAT HAPPENED."  *Id.*  This appears to be the complaint submitted to the CFPB by McCray referenced in the BOA message.  *Id.* ("CFPB Complaint").  The CFPB Complaint states many of the same concerns alleged in McCray's Complaint (ECF 2).

*Compare* ECF 2-1 (CFPB Complaint) at 1 (alleging BOA wrongfully "charged hazard insurance and real property taxes to an escrow account") *with*, *e.g.*, ECF 2 (Complaint) ¶ 7 (allegation of improperly charged hazard insurance) *and id.* ¶ 22 (allegation of improperly charged taxes). Below the section titled "WHAT HAPPENED", the CFPB Complaint also includes a section titled "Product Information," which lists a nine-digit number after the words "Account/Loan number." ECF 2-1 at 2.

Notably, plaintiff also submitted, as Exhibit C2, a letter addressed to McCray from BOA that responds to the CFPB Complaint. ECF 2-7 ("BOA Letter"). The BOA Letter, dated March 9, 2012, states: "[BOA] acknowledges receipt of your inquiry, dated January 31, 2012, filed with the [CFPB], which was received by Bank of America on February 2, 2012." ECF 2-7 at 1. The BOA Letter goes on to summarize the CFPB Complaint, recount what BOA's records show with respect to McCray's questions, and provide other requested information, as well as copies of McCray's loan documents and transaction history. *Id.* at 3-4.

Plaintiff's Exhibit B is a letter dated December 22, 2008, addressed "[t]o whom it may concern", and signed by McCray. ECF 2-3 ("McCray's Letter"). There is no name or address provided for the intended recipient of the letter. *Id.* at 1. There is a nine-digit number written next to her signature. *Id.* at 2. McCray's Letter outlines questions and concerns regarding a loan modification offer. *Id.* at 1-2. It asserts, for example, the following, *id.* at 1:

> The last modification that was given to me began on March 1, 2008. The principal balance at that time was $123,715.15. This new modification for the fixed interest rate states my principal balance will be $129,504.00. This amount is inaccurate to me because I was making loan payments for 7 months in the amount of $1080.97 which totals $7,566.79.

McCray then states that she believes the principal listed on the loan modification document at issue is incorrect. *Id.* She asks the recipient to "contact [her] with the correct

amount." *Id.*  She adds:  "I am signing the returned loan modification with the respect that the correct amount will be added to the principal balance," and the expectation that "Countrywide will have a representative contact me as soon as they receive receipt of my concerns in regards to the different amounts that are inaccurate on this form."  *Id.*

Plaintiff's Exhibit C is a document titled "Customer Complaint Form".   ECF 2-6 ("CCF").   In the upper right hand corner of the CCF, the document is identified as "OMB Control No. 1557-0232", with "Expiration Date: 12/31/2011".   The CCF appears to be a complaint form created by the Office of the Comptroller of the Currency, within the U.S. Department of the Treasury.  *See* U.S. Department of the Treasury, "Customer Complaint Form," OMB Control No. 1557-0232, *available at* http://www.helpwithmybank.gov/complaints/form-pdf/complaint.pdf; *see also* ECF 2 ¶ 37 (alleging McCray submitted complaints to the "The Office of the Comptroller of the Currency").  It is undated.

Under a section titled "Complaint Information," the CCF contains a single-spaced paragraph, presumably written by or on behalf of McCray.  ECF 2-6 at 3.  It begins:  "There are a couple of issues I've had with Countrywide as my mortgage company and I would like the following situations investigated."  *Id.*  The paragraph restates the concern asserted in McCray's Letter (ECF 2-3).  It says:  "I wrote a letter to discuss the discrepancies.  They never responded to my letter."  ECF 2-6 at 3.  It also expresses some of the same concerns contained in McCray's Complaint (ECF 2), including, for example, her concern that BOA wrongfully charged certain Baltimore City tax payments to her debt.  *Compare id. with* ECF 2 ¶ 22.

## II.  Standard of Review

A defendant may test the sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule

12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 n.3 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ⸺ U.S. ⸺, 135 S. Ct. 346, 346 (2014) (per curiam). But, Rule 8(a)(2) demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Iqbal*, 556 U.S. at 684; *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d

435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, —— U.S. ——, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010).  However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient.  *Twombly*, 550 U.S. at 555.  Moreover, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe*, 579 F.3d at 385-86.

A Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679 (citation omitted).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, —— U.S. ——, 132 S. Ct. 1960 (2012).

A court's consideration of a Rule 12(b)(6) motion is generally confined to facts alleged in the operative pleading.  Ordinarily, a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein."  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).  However, a court may properly consider documents "attached or incorporated into the complaint," as well as documents attached to the defendant's motion, "so long as they are integral to the complaint and authentic."  *U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).  To be "integral," a document must be one "that by its 'very

existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

### III.  Discussion

### A.  RESPA Claims

Congress enacted RESPA in order "to insure that consumers ... are provided with greater and more timely information on the nature and costs of the [mortgage loan] settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices … ."  12 U.S.C. § 2601.  Among other provisions, RESPA requires a mortgage servicer to respond to a borrower's "qualified written request" ("QWR").  *See* 12 U.S.C. § 2605(e)(1)(A), (B).

A QWR consists of written correspondence from a borrower that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower", and "(ii) includes a statement of the reasons for the belief of the borrower ... that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).  "[A]fter the receipt from any borrower" of a QWR, *id.* § 2605(e)(2), a mortgage servicer is required to, *id.*:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

In 2010, Congress amended the deadlines within which mortgage servicers must acknowledge and respond to a QWR. *See* Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), Pub. L. 111–203, § 1463(c), 124 Stat. 1376, 2184 (2010) (codified at 12 U.S.C. § 2605(e)(1)-(2),(4)). But, the substantive requirements of borrowers' QWR's and servicers' responses were not changed in the 2010 amendments to the act. *Compare* 12 U.S.C. § 2605(e) (2006) *with* 12 U.S.C. § 2605(e) (2012).

A servicer's failure to respond to a QWR as required entitles a borrower to recover actual damages, as well as statutory damages in cases showing a "pattern or practice of noncompliance." 12 U.S.C. § 2605(f). The Dodd-Frank Act of 2010, *supra*, changed the maximum award of statutory damages for a "pattern or practice" of violation from $1,000 to $2,000. *See* Pub. L. 111–203, § 1463(b)(1), 124 Stat. 1376, 2184.

"In order to state a claim for a violation of RESPA's QWR provisions, the borrower must demonstrate (1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages." *IAR Family Trust v. Suntrust Mortgage, Inc.*, 3:13-CV-418-GCM, 2014 WL 1432378, at *3 (W.D.N.C. Apr. 14, 2014).

In its Memo, BOA asserts three reasons as to why McCray's RESPA claims must be dismissed.[8]  First, BOA states that plaintiff has failed to allege facts showing that her letters to BOA are "qualified written requests" under RESPA.  ECF 11-1 at 8-10.  Second, BOA contends that plaintiff's exhibits, attached to the Complaint, show that BOA complied with its obligations under RESPA.  *Id.* at 10-11.  Finally, BOA argues that, even if it violated RESPA, McCray's claims must be dismissed because she fails to allege damages resulting from BOA's violations, as required by RESPA.  *Id.* at 11.  I will address each argument in turn.

### 1. QWR's

Defendant argues that McCray has identified, at best, two written inquiries that may possibly constitute QWR's under RESPA.  ECF 11-1 at 8.  Referring to plaintiff's exhibits B (McCray's Letter) and C (the CCF), BOA states:  "[D]espite alleging that she sent numerous written inquiries to [defendant], Plaintiff's Complaint identifies only two written inquiries as exhibits."  *Id.*  BOA argues that Exhibit B is not a QWR because it does not identify to whom the letter was sent, *id.*, or list an account number, *id.* at 9, or "assert any specific error in the accounting of the subject loan such that the recipient/servicer could investigate and respond."  *Id.*  According to BOA, Exhibit C is not a QWR because it "fails to list Plaintiff's account number", *id.*, and "fails to identify any specific accounting error to the extent that [defendant] could investigate and respond."  *Id.* at 9-10.

In its Memo, ECF 11-1 at 9-10, defendant cites one case in support of its argument on this point:  *Davis v. Bowens*, 11-CV-00691, 2012 WL 2999766, at *6 (M.D.N.C. July 23, 2012) (magistrate's report and recommendation), *adopted by* 2012 WL 4462184 (M.D.N.C. Sept. 25, 2012).  In *Davis*, *id.*, the plaintiff alleged only the following with respect to his claim that the

---

[8] Although BOA asserted a limitations defense with respect to McCray's supposed State law claims, BOA did not assert a limitations defense with respect to McCray's RESPA claims.

defendants failed to respond to his QWR, *id.* (alteration in original): "Plaintiffs [sic] have previously made written demands to Defendants U.S. Bank, National Default Corporation, Kellam & Pettit and Rogers Townshend [sic] & Thomas, P.C. to show evidence of standing to claim a debt and Defendants have directly refused to evidence such standing."

In her Opposition, McCray states: "Plaintiff sent numerous written inquiries meaning too many and more than one as identified in the complaint as exhibits A-C." ECF 13 at 5. She also responds to BOA's specific arguments concerning Exhibits B and C. With respect to Exhibit B, McCray argues that "Plaintiff's name is spelled out and signed and next to her name is the account number." *Id.* at 4. And, she states that Exhibit B "does show a specific concern," namely, "that there could be an error in the accounting of [the proposed loan] modification" referenced in the letter that constitutes Exhibit B. *Id.* at 5. Plaintiff did not respond to BOA's arguments with respect to Exhibit C. *Id.* at 4-7.

In my view, the Complaint identifies three written inquiries that plausibly constitute QWR's.

As discussed, in the body of the Complaint itself, only paragraphs eleven and twelve allege specific communications. Paragraph twelve plausibly alleges a QWR. It states that McCray sent "a letter" to defendant "along with" the "modification exhibit F"; that the "letter explained her issues with the $16,768.89 added to the back of her loan" as a result of the modification; and that she "also requested an explanation of the fees and stated she was signing the documents to save her home and with confidence someone will get back with her to discuss these concerns." ECF 2 ¶ 12. She never received a response, nor did she see the requested correction. *Id.* Exhibit F contains plaintiff's name, address, and loan number. ECF 2-11 at 1. Taking as true the allegation that McCray sent the letter described together with Exhibit F, it is

clear that the correspondence identified the plaintiff and her loan/account number, was sent to defendant, and identified sufficiently specific concerns to enable defendant to investigate those concerns and to respond.  Accordingly, McCray has plausibly alleged a QWR.  *See* 12 U.S.C. § 2605(e).

In addition, and as noted, the Complaint incorporates Exhibits A through C, submitted with the Complaint.  *See* ECF 2 ¶ 1.  Two out of three of these exhibits plausibly constitute QWR's.

Exhibit A contains a copy of a complaint submitted by McCray to the CFPB, which included her name and account number, ECF 2-2 at 2, and detailed many specific charges to her debt that McCray asserted were in error.  *Id*. at 1.  It is clear that BOA received the CFPB Complaint, because Exhibit A also contains BOA's acknowledgment of receipt.  *Id*. Accordingly, Exhibit A plausibly constitutes a QWR.

Similarly, Exhibit B, McCray's Letter of December 22, 2008, appears to have been sent to Countrywide, identified McCray as the borrower, enabled defendant to identify her account number, and detailed specific charges that McCray asserted were in error.  ECF 2-3.  Although the letter does not identify the addressee by name, the text states that McCray "expects Countrywide will have a representative contact" her.  *Id*. at 1.  And, she alleges in her Complaint that she sent the letter.  ECF 2 ¶ 1.  Construing the facts in the light most favorable to McCray, as I must at this juncture, these allegations suggest it was sent to Countrywide.  Although nothing in McCray's Letter was labelled "account number," there is a nine-digit number handwritten next to her signature on the letter.  *Id*. at 2.  That nine-digit number matches the nine-digit number identified as McCray's "Account/Loan number" in Exhibit A.  *Compare* ECF 2-1 at 2 *with* ECF 2-3 at 2.  Surely, defendant could have identified McCray's account.

16

Moreover, there is no merit to BOA's assertion that Exhibit B fails to "assert any specific error in the accounting of the subject loan such that the recipient/servicer could investigate and respond." ECF 11-1 at 9.  McCray's Letter expressly states, for example, that she was concerned about the accuracy of "the principal balance" provided in her most recent loan modification, because she believes it should have reflected the last seven payments she made on the debt.  ECF 2-3 at 1.  That is an assertion of specific error that defendant could have investigated and for which it could have provided a response.  Accordingly, Exhibit B plausibly constitutes a QWR.  *See Boardley v. Household Finance Corp. III*, 39 F. Supp. 3d 689, 701-02 (D. Md. 2014) (quoting the plaintiff's exhibit) (denying motion to dismiss where plaintiff's exhibit constituted a QWR, even though it did not include the account/loan number, and asserted simply that plaintiffs "'made all their payments from April 2009 through July 2012 but [Defendants] did not credit the account'") (alteration in original).

Exhibit C (the CCF), however, does not plausibly constitute a QWR.  *See* ECF 2-6. Notably, although plaintiff alleges that she "sent" the CCF, ECF 2 ¶ 1, she does not allege to whom she sent it.  *Id.*  And, unlike Exhibit B, the text of the exhibit itself does not clearly show that plaintiff's lender (be it Countrywide or BOA) was the intended recipient.  ECF 2-6.  Per the plain text of 12 U.S.C. § 2605(e), defendant is only obligated to respond to communications from borrowers that it "receives."  Neither the CCF nor the factual allegations in the Complaint plausibly show or support an inference that BOA actually received the CCF.  Accordingly, Exhibit C does not plausibly constitute a QWR.

The remainder of the RESPA allegations in the body of the Complaint also do not plausibly allege additional QWR's.  As discussed, most of them do not even allege that McCray sent defendant a written communication.  For example, paragraph eleven alleges that McCray

"sent a request to Defendant" and that "Defendant failed to investigate the breakdown of [certain] costs" related to her debt, but the allegations do not show whether the communication identified the plaintiff, enabled defendant to identify her account number, or articulated her concerns clearly enough that defendant could investigate and respond.  *See* ECF 2 ¶ 11.   In effect, the RESPA allegations in paragraphs ten, eleven, thirteen, fourteen, fifteen, nineteen, twenty-eight, and thirty-seven are indistinguishable from the allegations in the case cited by BOA.  *Davis*, 2012 WL 2999766, at *6.  For all of these reasons, those allegations fail to state claims under RESPA.

In sum, the Complaint and its accompanying exhibits plausibly show that McCray submitted three QWR's to BOA and/or Countrywide, included with the Complaint in Exhibits A and B to the Complaint, and as alleged in paragraph twelve of the Complaint.   If plaintiff believes that she has submitted additional QWR's to BOA, plaintiff may file an amended complaint within twenty-one days from the date of docketing of this Memorandum Opinion, to include new allegations specifying any additional QWR's plaintiff submitted, to whom and when she sent them, how they enabled defendant to identify her and her loan or account number, and what information and/or corrections each QWR requested.

### 2. Responses to QWR's

Defendant argues that the Complaint fails to state a claim for a violation of RESPA with respect to Exhibit A (the CFPB Complaint) because "Plaintiff's own allegations" and Exhibit C2 to the Complaint (BOA Response) "show that [defendant] responded to the request, provided detailed information, and produced documentation to support its account calculations."  ECF 11-1 at 11.  It continues:  "As such, Plaintiff's own allegations demonstrate that [defendant] complied with its obligations under RESPA, to the extent said obligations existed."  *Id.*

In response, McCray argues that BOA "did respond to some of Plaintiff's concerns but not all." ECF 13 at 6.  Specifically, she asserts, *id.*:

> See Exhibit A [CFPB Complaint] which has two pages.  Page 1 of Exhibit A shows a snippet of plaintiff's concerns and issues with the defendants.  There are multiple situations noted on page 1 of exhibit A but they were not investigated, corrected nor mentioned in defendants [sic] response exhibit C2.  The Defendant did provide calculations however plaintiff's use of the Defendants formula's [sic] produced different calculations.

In her Opposition, McCray acknowledges that BOA "did provide calculations" in response to her concerns.  ECF 13 at 6.  But, she argues that her own "use" of BOA's formula "produced different calculations."  *Id.*  Regardless of whose calculations are correct, "a servicer receiving a QWR[ ] that requests a correction may comply with § 2605(e)(2) without making the correction to the account if the servicer's investigation leads the servicer to conclude that the account is correct, *see* 12 U.S.C. § 2605(e)(2)(B)(i) … ."  *Boardley*, 39 F. Supp. 3d at 701.

Although BOA did not make the "corrections" McCray requested in the CFPB Complaint, it is clear that BOA did investigate McCray's concerns and, as required by § 2605(e)(2)(B)(i), provided "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer."  *See* BOA Response, ECF 2-7 at 1, 3-4; *Boardley*, 39 F. Supp. 3d at 702 (finding plaintiffs failed to state a claim where allegations showed defendants "reviewed their records" and provided a written explanation with the reasons why defendants believed their calculations were correct).  Therefore, I agree with defendant that Exhibit C2 to the Complaint shows BOA satisfied its obligation under RESPA to respond to the QWR included as Exhibit A to the Complaint.

Accordingly, McCray has failed to state a claim for violation of RESPA with respect to the QWR included as Exhibit A to the Complaint, because the allegations show that BOA

responded.   It follows that McCray's RESPA claim with respect to Exhibit A is subject to dismissal, with prejudice.

To the extent that BOA argues it has responded to all of McCray's QWR's, the allegations show that BOA failed to respond to two other QWR's:  the QWR included as Exhibit B to the Complaint and the QWR alleged in paragraph twelve of the Complaint.

### 3.  Damages

BOA argues that, even if the Court finds McCray has plausibly alleged a QWR, and even if the Court finds that BOA has failed to respond to one or more QWR's, McCray's RESPA claims must be dismissed because she failed to allege actual damages or facts sufficient to support statutory damages.   ECF 11-1 at 11.   In response, McCray states:  "Plaintiff has indicated actual damages in the original complaint as stated on pg 16 prayer for relief 'Plaintiff respectfully request [sic] that … judgment be entered in her favor for each violation, for loss of time writing and contacting agencies and the Defendant in the amount of $200,000.'"   ECF 13 at 6 (quoting ECF 2 at 16).

Defendant is correct that a plaintiff must allege damages in order to state a claim that a defendant has violated RESPA's QWR provisions.   *See Ward v. Security Atl. Mortg. Electronic Registration Systems, Inc.*, 858 F. Supp. 2d 561, 575 (D. Md. 2012) ("Plaintiffs nevertheless do not state a claim under 12 U.S.C. § 2605(e) as Plaintiffs fail to allege any pecuniary loss attributable to the RESPA violation."); *Minson v. CitiMortgage, Inc.*, DKC-12-02233, 2013 WL 2383658, at *5 (D. Md. May 29, 2013) (same); *Bravo v. MERSCORP, Inc.*, 12-CV-884 ENV LB, 2013 WL 1652325, at *3 (E.D.N.Y. Apr. 16, 2013) ("Even if the communication were a QWR, defendants assert correctly that plaintiff fails to state a claim, because he pleads neither actual damages flowing from the charged RESPA violation nor facts showing a pattern or

practice of noncompliance with the QWR provisions of RESPA warranting statutory damages under 12 U.S.C. § 2605(f).").  But, in its Memo, defendant completely ignores McCray's allegation that she suffered actual damages in the form of "loss of time writing and contacting agencies and the Defendant."  ECF 2 at 16.  *See generally* Memo, ECF 11-1.

Courts have held that RESPA plaintiffs may recover actual damages for the costs of their efforts to obtain responses to QWR's after defendants have failed to respond.  *See McCray v. Fed. Home Loan Mortgage Corp.*, GLR-13-01518, 2014 WL 293535, at *14 (D. Md. Jan. 24, 2014) ("McCray alleges she accrued expenses in her attempts to receive responses to her QWRs, including sending certified mail, traveling to and from the post office, copying documents, and researching information. These expenses are recoverable under RESPA and are sufficiently alleged."); *McLean v. GMAC Mortgage Corp.*, 595 F. Supp. 2d 1360, 1366 (S.D. Fla. 2009) ("Courts have interpreted the term 'actual damages' to include pecuniary damages such as: (1) out-of-pocket expenses incurred dealing with the RESPA violation including expenses for preparing, photocopying and obtaining certified copies of correspondence, (2) lost time and inconvenience, such as time spent away from employment while preparing correspondence to the loan servicer, to the extent it resulted in actual pecuniary loss (3) late fees and (4) denial of credit or denial of access to full amount of credit line."), *aff'd*, 398 F. App'x 467 (11th Cir. 2010). Accordingly, the Complaint plausibly alleges that McCray suffered actual damages as a result of BOA's failure to respond to her QWR's (*i.e.*, Exhibit B and ECF 2 ¶ 12).

## B.  Remaining Claims

As stated, BOA posits in its Motion and Memo that the Complaint attempts to allege common law claims for accounting and breach of contract as well as a cause of action for loss of rental income.  ECF 11-1 at 2.  BOA further argues that most of the common law claims are

barred by Maryland's three-year statute of limitations applicable to civil actions, *id.* at 6 (citing

Md. Code (2013 Repl. Vol.), § 5-101 of the Courts & Judicial Procedure Article), and that, in

any event plaintiff has failed to allege facts sufficient to state claims for accounting, breach of

contract, or loss of rental income.  ECF 11-1 at 7-8, 12-15.

In her Opposition, McCray rejects BOA's interpretation of her claims.  With regard to the

supposed claim for accounting, McCray states, ECF 13 at 3-4:

> Defendants [sic] assert on pg 8 paragraph 1 'Because Plaintiff has equal access to
> her loan documents and payment transactions her request for an accounting must
> be dismissed with prejudice.'  Plaintiff has access to her loan payments and
> transactions and years later the loan still has discrepancies.  Because plaintiff has
> access to her loan documents and payment transactions it only allows her to
> recognize unfair and deceptive practices it does not explain defendants [sic]
> accounting procedures nor allow her to make the correct changes nor provide the
> correct amount to the new servicer, only the defendant can do that.  Therefore,
> Plaintiff ask [sic] the court to allow the defendants [sic] to provide explanation of
> unfair and deceptive practices detailed in plaintiff's complaint and not dismiss
> this request.

In Maryland, a "suit for an accounting arises in equity and 'may be maintained when the

remedies at law are inadequate.'"  *Gephardt v. Mortgage Consultants, Inc.*, JFM–10–01537,

2011 WL 531976, at *4 (D. Md. Feb.8, 2011) (quoting *P.V. Props. Inc. v. Rock Creek Vill.*

*Assocs. Ltd. P'ship*, 77 Md. App. 77, 89, 549 A.2d 403, 409 (1988)). It is "available when 'one

party is under [an] obligation to pay money to another based on facts and records that are known

and kept exclusively by the party to whom the obligation is owed, or where there is a

[confidential or] fiduciary relationship between the parties."  *Polek v. J.P. Morgan Chase Bank,*

*N.A.,* 424 Md. 333, 365 (2012) (quoting *P.V. Props., Inc.*, 77 Md. App. at 89, 549 A.2d at 409

(1988)).  "Because the relief sought in an accounting claim is access to information, discovery is

the remedy given to plaintiffs who prove they are entitled to an accounting."  *Golub ex rel.*

*Golub v. Cohen*, 138 Md. App. 508, 523, 772 A.2d 880, 889 (2001).

McCray unambiguously agrees with BOA that she "has access to her loan documents and payment transactions." ECF 13 at 3. In other words, she states that she is not seeking her loan documents and payment transactions, which would be the goal of an accounting action. *Golub*, 138 Md. App. at 523, 772 A.2d at 889. Rather, she seeks an explanation of BOA's "accounting procedures" and unspecified corrections to her debt. ECF 13 at 3. She reiterates her belief that BOA's actions constitute "unfair and deceptive practices." *Id*.

With respect to the Complaint's supposed breach of contract claim, McCray states in her Opposition, ECF 13 at 9:

> This is not a breach of contract claim for it is in the deed of trust to place insurance on a loan when insurance is inactive however plaintiff's concern is the defendant placing insurance on her loan while she currently has and is paying for active insurance on the loan. Which is an unfair and deceptive practices [sic] under Section 5(a) of the FTC Act 15 U.S.C [sic] § 45(a).

Again, McCray appears to reject BOA's construction of her allegations. She reiterates her assertion, expressed for the first time in her Opposition, that BOA's conduct violated 15 U.S.C. § 45(a). ECF 13 at 9. And, BOA did not respond to that assertion in its Reply. ECF 14.

With respect to plaintiff's claim for loss of rental income, McCray explains in her Opposition that she only seeks loss of rental income "due to actions by and from the defendant failing to comply with RESPA … ." ECF 13 at 8. Moreover, her request for "loss of rental income" only appears in the Complaint under the section titled "Prayer for Relief." ECF 2 at 16. Therefore, it appears that McCray agrees with BOA that her Complaint does not assert a discrete cause of action for loss of rental income, nor did she intend to assert such a claim. Rather, plaintiff believes she is entitled to damages, including loss of rental income, only as a result of her other claims. ECF 13 at 8.

In sum, for the foregoing reasons, it appears that McCray did not intend to allege discrete, common law claims for accounting, breach of contract, or loss of rental income.  Nor do I discern such claims in the Complaint.  The Court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because she is self-represented.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir.2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint); *Telford v. Vandusen,* 972 F.2d 342, *1 (4th Cir. 1992) (unpub.) (finding district court did not err in ignoring self-represented plaintiff's "property damage" claim, because plaintiff made only an "oblique reference to the property damage in the body of the complaint, [and] it [was] nowhere mentioned in the demand for judgment").

Accordingly, I will deny as moot BOA's Motion as to the supposed claims, without prejudice.  However, if plaintiff did intend to allege those claims, then she may amend her complaint to expressly include them, along with supporting factual allegations, and must do so within twenty-one days from the date of docketing of this Memorandum Opinion.

## Conclusion

For the foregoing reasons, I will grant in part and deny in part BOA's Motion (ECF 11). In particular, I will deny the Motion with respect to McCray's RESPA claim that BOA failed to respond to the QWR included as Exhibit B to her Complaint and the QWR alleged in paragraph twelve of the Complaint.  I will deny the Motion, as moot, with respect to the Complaint's supposed claims for accounting, breach of contract, and loss of rental income.  I will grant the Motion with respect to McCray's claim that BOA violated RESPA by failing to respond to the

QWR included as Exhibit A, because it is clear from the allegations that BOA adequately responded.  And, I will dismiss all other RESPA claims alleged in the Complaint, without prejudice.

If plaintiff believes that BOA has failed to respond to additional QWR's not already included as exhibits to the Complaint, and/or if plaintiff intended to allege claims for accounting, breach of contract, loss of rental income, or the violation of 15 U.S.C. § 45, or a claim based on the "rules" cited in her Motion for a Hearing (ECF 16), plaintiff may amend her complaint to expressly include those claims, along with supporting factual allegations, within twenty-one days from the date of docketing of this Memorandum Opinion.

A separate Order follows, consistent with this Memorandum.


Date: June 1, 2015                                      _____/s/_____
                                                        Ellen Lipton Hollander
                                                        United States District Judge