IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHELLE MCCRAY
    *Plaintiff*

    v.

BANK OF AMERICA, CORP.
    *Defendant*.

Civil Action No. ELH-14-2446

**MEMORANDUM OPINION**

In an Amended Complaint (ECF 20), Michelle McCray, the self-represented plaintiff, sued defendant "Bank of America, Corp., et al." ("BOA").[1] The litigation is rooted in plaintiff's purchase in August 2006 of a home on Harriet Avenue in Baltimore, with a mortgage loan from Countrywide Home Loans, Inc. ("Countrywide"). *Id.* BOA purchased Countrywide in 2008, and plaintiff's loan was formally transferred to BOA in 2009.[2] *See* ECF 20, ¶ 1; ECF 20 Ex. A; ECF 2-1.[3]

---

[1] According to defendant, Bank of America, Corp. is a holding company that neither makes nor services mortgage loans and had no involvement with plaintiff. ECF 65-1 at 1 n.1. Defendant assumes that plaintiff intended to sue Bank of America, N.A. ("BANA"), because BANA, or its predecessor by merger, "was the entity that serviced the loan at issue as it relates to the allegations" in the first amended complaint. *Id.*

The Court is mindful that Bank of America, N.A. is often referred to colloquially as "BOA." Indeed, BANA's letterhead states only "Bank of America." *See* ECF 20, Ex. Z1. Therefore, I shall use the abbreviation BOA, in lieu of BANA.

[2] Plaintiff refers to "Countrywide Home Loans" (ECF 20 at 1), while defendant refers to the entity as "Countrywide Home Loans Inc., d/b/a, America's Wholesale Lender." *See* ECF 65-1 at 3. I shall use the corporate designation.

According to BOA's website, BOA announced its acquisition of Countrywide on January 11, 2008. *See Bank of America Agrees to Purchase Countrywide Fin. Corp.*, Bank of America Investor Relations (January 11, 2008), *available at*: http://bit.ly/2mco5Hl.

[3] McCray frequently refers to "defendants" but has sued only one defendant. She filed numerous exhibits with the Amended Complaint (ECF 20), but they are not available on

McCray appears to assert multiple violations of the Real Estate Settlement Procedures Act, as amended, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"), and a violation of RESPA's implementing regulations. *See, e.g.*, ECF 20 ¶¶ 1, 13, 23, 40-42. Plaintiff also seems to assert a claim under the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5531 and 5536(a). *Id.* ¶ 2.[4] In her prayer for relief, McCray asks the Court to appoint "an independent company or individual . . . to review the defendant's loan servicing (accounting practices) in order to resolve the discrepancies" described in the Amended Complaint. ECF 20 at 21-22. In addition, McCray also seeks, *inter alia*, damages for harm to the house caused by BOA (ECF 20 at 22), and damages under RESPA for "error[s] not investigated, corrected, and or [sic] mentioned in defendant's response . . . ." *Id.* at 23.

BOA has filed a motion for summary judgment (ECF 65), which is supported by a memorandum of law (ECF 65-1) (collectively, the "Motion") and exhibits. ECF 65-2 through ECF 65-8. McCray opposes the Motion (ECF 66) ("Opposition") and has also submitted exhibits. ECF 66-1 through ECF 66-6. BOA has replied (ECF 67) and has provided an additional exhibit. ECF 67-1.

In its Motion, BOA failed to address a claim based on a Consumer Complaint Form ("CCF") and an exhibit submitted by plaintiff with ECF 20, *i.e.*, Exhibit Z1. Therefore, by Order

---

CM/ECF and were not assigned document numbers by the Clerk. Therefore, I shall refer to the exhibits using plaintiff's labels. However, where exhibits were submitted with other filings, I will also refer to the ECF number.

[4] As discussed, *infra*, in June 2015 I issued a Memorandum Opinion (ECF 18) and Order (ECF 19), granting in part and denying in part BOA's motion to dismiss (ECF 11). The Court determined that plaintiff did not assert "discrete, common law claims for accounting, breach of contract, or loss of rental income." ECF 18 at 24. However, I granted leave to amend to assert such claims. *Id.*; ECF 19. Nevertheless, it does not appear that the Amended Complaint asserts common law claims for accounting, breach of contract, or loss of rental income. *See* ECF 20 ¶¶ 1, 7. Accordingly, for the reasons stated in ECF 18, I shall not consider such claims.

of February 13, 2017 (ECF 73), I invited the parties to submit memoranda addressing plaintiff's claim that BOA failed to respond sufficiently to the CCF that plaintiff submitted to the Office of the Comptroller of the Treasury in violation of RESPA, and to her claim under 24 C.F.R. § 3500.17(k)(1). *Id.*; *see* ECF 65. I also advised the parties that my Order constituted notice that I would address the issues under Fed. R. Civ. P. 56. ECF 73 at 3. Per my Order (ECF 73), the parties submitted memoranda (ECF 82, McCray; ECF 83, BOA). In addition, BOA responded to ECF 82, as permitted by my Order. *See* ECF 85. However, McCray did not respond to ECF 83, although she was permitted to do so. *See* docket.

I have construed BOA's two submissions (ECF 83; ECF 85) as supplements to its Motion. I will construe plaintiff's submission (ECF 82) as a supplement to her Opposition.

The Motion is fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6. The Court is mindful of its obligation to construe liberally the pleadings of a pro se litigant, which are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Nevertheless, for the reasons that follow, I shall grant the Motion.

## I.    Factual and Procedural Background

### A.  Procedural Background

McCray filed suit in the Circuit Court for Baltimore City in June 2014 (ECF 2) and included thirty-five exhibits. ECF 2-1 through ECF 2-35. Defendant removed the case to this Court under 28 U.S.C. §§ 1331, 1332, and 1441. ECF 1.

On September 8, 2014, BOA moved to dismiss the initial Complaint. ECF 11; *see* ECF 2. By Memorandum Opinion (ECF 18) and Order (ECF 19) of June 1, 2015, I granted the motion in part and denied it in part.[5]

In particular, I granted the motion, with prejudice, as to McCray's RESPA claim arising from the complaint submitted to the Consumer Financial Protection Bureau ("CFPB"). ECF 19. I could not determine whether plaintiff asserted claims for accounting, breach of contract, and loss of rental income, and thus denied them. *Id.*; *see* ECF 18 at 21-24. And, I denied the motion to dismiss with respect to plaintiff's RESPA claim regarding two qualified written requests submitted by plaintiff. *See* ECF 18 at 20. In my Order (ECF 19), I granted plaintiff twenty-one days to amend her suit to allege RESPA claims for additional qualified written requests and to assert other claims, such as for an "accounting, breach of contract, loss of rental income, or the violation of 15 U.S.C. § 45, or a claim based on the 'rules' cited in her Motion for a Hearing." *Id.*

McCray filed an Amended Complaint on June 18, 2015. ECF 20. It contains forty-three numbered paragraphs and a lengthy prayer for relief. *Id.* The assertions in the Amended Complaint are challenging to discern, and the document does not explicitly set forth causes of action. *See id.* Nor did McCray include as an exhibit a "redline copy" identifying the changes made in the Amended Complaint. *See* ECF 20; Local Rule 103.6.

Upon review of ECF 20, although the language has changed, it does not appear that McCray has asserted claims for an accounting, breach of contract, or loss of rental income. *See*

---

[5] I incorporate here the factual and procedural history set forth in my Memorandum Opinion of June 1, 2015. *See* ECF 18.

ECF 20.[6]  And, it does not appear that McCray has asserted claims under the "rules" cited in ECF 16 (§ 1026.36(c); § 1024.37; and § 1024.35(a)).[7]  But, it does appear that McCray has asserted a new claim under the CFPA (ECF 20, ¶ 2), and a new claim under RESPA's implementing regulations.  ECF 20, ¶ 23.  Moreover, McCray has amplified her RESPA claims regarding the CCF and the CFPB Complaint.  *See* ECF 20, ¶¶ 40, 42.

## B.  The Loan

On or about August 30, 2006, plaintiff executed a Deed of Trust in favor of Countrywide and obtained an adjustable rate mortgage in the amount of $107,350.00 ("Loan"), with an initial interest rate of 9.850%, secured by property located at 2469 Harriet Ave., Baltimore, MD 21230 (the "Property").  ECF 11-2 (Deed of Trust).  Although the Loan was initially made with Countrywide, BOA acquired Countrywide in 2008.  ECF 20, ¶ 1.

McCray obtained several modifications to the Loan.  She obtained her first modification on January 9, 2008 ("First Modification").  ECF 20 Ex. F; ECF 2-11.  BOA's payment records show that, at the time of the First Modification, payment was due and owing for May 2007.  ECF 65-2 at 31-32; 38-39.  The First Modification, which was effective March 1, 2008, reflected an unpaid principal balance of $123,715.15, with monthly payments of principal and interest in the sum of $1,369.64, and an interest rate of 9.850%.  *Id.*

---

[6] In the Amended Complaint, McCray amplified her assertions regarding lost rental income.  ECF 20, ¶ 43.  But, the assertions relate to damages rather than to an independent claim. *See* ECF 66 at 9 ("If the Defendants [sic] didn't fail to investigate, correct and send corrections to the new servicer Plaintiff's house would have not been lock [sic]; Plaintiff would have found a tenant and would have been earning rental income."); *cf* ECF 13 at 8.

[7] Plaintiff did not identify in ECF 16 the title of the U.S. Code or Code of Federal Regulations to which she was referring.  It appears that these citations are to Title 12 of the Code of Federal Regulations.

On December 4, 2008, McCray obtained a second modification of the Loan ("Second Modification"). ECF 20 Ex. G; ECF 2-12 (Second Modification). The Second Modification, which was to be in effect from January 1, 2009 until December 31, 2013, reflected a principal balance of $129,504.00, based on payments due and owing for August 2008. *Id.*; *see* ECF 65-2 at 33. It also reduced McCray's interest rate to 3.625%, with combined monthly payments of $618.38. ECF 20 Ex. G; ECF 2-12 at 1.

McCray was approved for a third modification on May 11, 2009 ("Third Modification"). ECF 20 Ex. D-1; ECF 2-8; ECF 65-2 at 48-50 (Third Modification). The Third Modification reflected an unpaid principal balance of $128,428.94, included monthly payments of $724.27, and set a fixed interest rate of 3.585%, effective as of July 1, 2009. ECF 65-2 at 48-50. BOA's records indicate that the Third Modification was effective as of November 13, 2009. *See* ECF 65-2 at 34.

Thereafter, McCray intermittently failed to make payments due on the Loan. *See* ECF 65-2 at 33-37. Moreover, BOA did not receive payments from McCray after April 29, 2011. That payment was applied to the payment due and owing for January 2011. ECF 65-2 at 37.

BOA notified McCray on November 23, 2011, that it had transferred the Loan to Specialized Loan Servicing, LLC ("SLS"), effective January 1, 2012. ECF 20 Ex. B2; ECF 2-5 (Notice of Assignment).[8] On or about March 19, 2015, the Deed of Trust was assigned to the Bank of New York Mellon (f/k/a Bank of New York) ("BONY"), as Trustee for the Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2006-18. ECF 65-2 at 25-26 (Assignment of Beneficial Interest).

---

[8] Plaintiff twice sued SLS, without success. *See* RDB-12-2200; JFM-15-2807. *See also* ECF 65-3; ECF 65-4. It is well settled that a district court may "properly take judicial notice of its own records." *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990); Fed. R. Evid. 201.

On April 21, 2015, foreclosure proceedings were initiated in the Circuit Court for Baltimore City against the Property, Case No. 24O15001102. *See* ECF 65-7. The Property was sold to BONY at a foreclosure sale on October 20, 2015, for $31,500. *See id.*; ECF 65-6 (Substitute Trustee's Deed). The sale was ratified on or about July 29, 2016. ECF 65-7 at 8. BONY assigned the deed to a third party on June 10, 2016, for $32,000. ECF 65-8 (Deed of Assignment).

### C.  The Qualified Written Requests

Congress enacted RESPA in order "to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the [mortgage loan] settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices . . . ." 12 U.S.C. § 2601. Under RESPA, a mortgage servicer must respond to, or take action on, a borrower's qualified written request ("QWR"). 12 U.S.C. § 2605(e)(2).

A QWR is a "written request from the borrower . . . for information relating to the servicing of [a] loan." 12 U.S.C. § 2605(e)(1)(A). RESPA further defines a QWR as written correspondence from a borrower that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower," and "(ii) includes a statement of the reasons for the belief of the borrower . . . that the account is in error . . . ." *See* 12 U.S.C. §§ 2605(e)(1)(B).

In her Amended Complaint, McCray asserts that she submitted four QWRs to Countrywide and/or BOA, to which the loan servicer did not respond or responded inadequately.[9] According to McCray, she sent her first QWR ("First Letter") to Countrywide after signing the First Modification. ECF 20, ¶ 13. In particular, McCray claims that she sent the First Letter when she returned the documents for the First Modification (*id.*), which were due

---

[9] According to BOA, plaintiff alleged that she only sent three QWRs. ECF 65-1 at 6.

on January 24, 2008.  ECF 2-11 at 2.  But, at her deposition, McCray testified that the First

Letter was sent "back in early 2007, 2008; I'm not quite sure."  ECF 67-1 at 4.  Notably, McCray

does not have a copy of the First Letter.  At her deposition, McCray testified: "I don't have that

letter . . . .  [U]nfortunately that's the one letter I do not have."  *Id.*

McCray also sent a letter to Countrywide dated December 22, 2008, along with the

Second Modification.  ECF 20 Ex. B; ECF 2-3 ("Second Letter").  At her deposition, McCray

testified that she sent the Second Letter "with the loan modification agreement. . . .  It was in the

same envelope."  ECF 65-2 at 5.  The Second Letter sought information as to perceived

inaccuracies in the modification, including the payment amount and principal balance.  ECF 20

Ex. B; ECF 2-3.  In the Second Letter, McCray stated:

> I have contacted [C]ountrywide on several occasions seeking to speak with
> someone who can assist me with this modification and the inaccuracy.
> Unfortunately no one returned any of my phone calls, therefore I have decided to
> place it all in writing. I am not able to pay back the amount that I owe but I have
> some concerns about the amount that is being added to my principal balance.

The Second Letter concluded, *id.*: "Please note that I am signing these documents with

the understanding that I will be contacted to resolve the inaccurate amounts of principal balance,

monthly mortgage, and the date this modification will all take effect."

Moreover, McCray submitted a Customer Complaint Form to the Office of the

Comptroller of the Treasury.  ECF 20, Ex. C; ECF 2-6 (CCF).  Exhibit C is undated, apart from

an "Expiration Date" of December 31, 2011.  *See* ECF 20 Ex. C; ECF 2-6.  However, in a letter

from BOA to McCray in response to the CCF, dated November 4, 2010 (ECF 20, Ex. Z1), BOA

stated that the CCF was filed with the Office of the Comptroller of the Currency on September 22, 2010. *Id.*[10]

Under a section titled "Complaint Information," the CCF contains a single-spaced paragraph. ECF 20, Ex. C at 3; ECF 2-6 at 3. It begins: "There are a couple of issues I've had with Countrywide as my mortgage company and I would like the following situations investigated." *Id.* Plaintiff reiterated the concern expressed in the Second Letter (ECF 20, Ex. B; ECF 2-3), and said: "I wrote a letter to discuss the discrepancies. They never responded to my letter." *Id.* at 3. McCray also expressed some of the same concerns contained in the Amended Complaint (ECF 20), including, for example, the concern that BOA wrongfully charged her for certain Baltimore City tax payments to her debt. *Compare* ECF 20, Ex. C *with* ECF 20, ¶ 23.

BOA responded to McCray's CCF in a letter dated November 4, 2010. ECF 20, Ex. Z1. BOA explained the calculation of the principal, how McCray's payments were applied to the account, and why certain fees were assessed following the modifications. *Id.* Moreover, BOA provided a breakdown of the amount due, and asked McCray to contact a customer service representative so that BOA could further answer her questions. *Id.*

---

[10] On its face, Exhibit C does not indicate that it is a form for use with the Office of the Comptroller of the Currency. However, pursuant to the Paperwork Reduction Act of 1995, 44 U.S.C. §§ 3501, *et seq.*, and its implementing regulations, 5 C.F.R. §§ 3501, *et seq.*, each federal agency must obtain an OMB Control Number from the Office of Information and Regulatory Affairs ("OIRA") of the Office of Management and Budget for each information collection, and display that number on the front page of the form collecting information. *See, e.g.*, 44 U.S.C. § 3506; 5 C.F.R. § 1320.3. The OMB Control Number on the CCF is 1557-0232. *See* ECF 20, Ex. C; ECF 2-6. I take judicial notice that OMB Control Number 1557-0232 corresponds to the Customer Complaint Form issued by the Office of the Comptroller of the Treasury. *See, e.g.*, 80 FR 51350-01 (Aug. 24, 2015); *see also* OIRA, *RegInfo Search*, OMB Control Number 1557-0232, *available at*: http://go.usa.gov/x9hrg.

Then, on January 31, 2012, McCray filed a customer complaint with the CFPB.  ECF 20, Ex. A; ECF 2-1 ("CFPB Complaint").[11]  The CFPB Complaint identified BOA as the financial institution that was the subject of the complaint and listed a variety of perceived problems with McCray's mortgage, including the calculation of payments, the amount of principal due, and the assessment of various charges.  *See* ECF 20, Ex. A; ECF 2-1.  McCray also claimed that BOA's customer service was unresponsive to her concerns.  *Id.*

BOA responded to McCray's CFPB Complaint by letter dated March 9, 2012.  ECF 20, Ex. C2; ECF 2-7.  BOA included detailed explanations as to McCray's inquiries, including the computation of the principal balance, the assessment of fees, and why property taxes were charged.  *Id.* at 2-3.  Moreover, the response noted that BOA had unsuccessfully attempted to contact McCray by telephone on February 15 and 16, 2012, to discuss her concerns.  *Id.* at 1.  In the event McCray wanted to discuss her concerns, the response included the telephone number of Paulette Dearmyer, "Customer Advocate," in the "office of the CEO and President," who signed BOA's letter.  *Id.* at 3.

Additional facts are included in the Discussion.

## II.    Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) (" A court can grant summary judgment only if, viewing the evidence in the light

---

[11]  The complaint submitted to the CFPB is undated.  S*ee* ECF 20, Ex. A; ECF 2-1. However, BOA responded to the CFPB Complaint by letter to McCray dated March 9, 2012.  In the letter, BOA indicated that the complaint is dated January 31, 2012.  ECF 20, Ex. C2; ECF 2-7.

most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied,* 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322–24. Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *Anderson*, 477 U.S. at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016). Conversely, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

### III.  Discussion

### A.  The RESPA Claims

Plaintiff claims that she is entitled to relief under RESPA based on BOA's failure to respond to the First Letter, the Second Letter, the CCF, and the CFPB Complaint, which she

asserts were QWRs within the meaning of the statute. ECF 20, ¶¶ 1, 13, 40-42; *see* ECF 65-2 at 96. In the Motion, BOA asserts five grounds as to why summary judgment should be granted as to these claims. In particular, BOA asserts: (1) there is no evidence as to the existence of the First Letter; (2) plaintiff sent the First Letter and the Second Letter to the wrong address, absolving BOA of liability under the RESPA; (3) the Second Letter was not a QWR as defined by the RESPA; (4) plaintiff failed to produce any evidence of damages; and (5) McCray's claims under RESPA are time-barred. ECF 65-1 at 11-15.

For the reasons stated below, I shall grant summary judgment to BOA with respect to McCray's claims regarding the First Letter, the Second Letter, and the CCF, because those claims are barred by RESPA's statute of limitations. And, I shall grant the Motion as to the CFPB Complaint because that claim was previously dismissed, with prejudice. Finally, I shall award summary judgment to BOA as to McCray's claim under RESPA's implementing regulations, because Congress has not created a private right of action for such a claim.

### 1. The Statute

As noted, Congress enacted RESPA in order "to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the [mortgage loan] settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices . . . ." 12 U.S.C. § 2601. And, as indicated, a QWR consists of written correspondence from a borrower that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower", and "(ii) includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

Upon receipt of a QWR from a borrower, § 2605(e)(2) requires a mortgage servicer to:

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which  the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a  written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

In 2010, Congress amended the deadlines within which mortgage servicers must acknowledge and respond to a QWR.   *See* Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), Pub. L. 111–203, § 1463(c), 124 Stat. 1376, 2184 (2010) (codified at 12 U.S.C. § 2605(e)(1)-(2),(4)).   But, the substantive requirements of borrowers' QWR's and servicers' responses were not changed.  *Compare* 12 U.S.C. § 2605(e) (2006) *with* 12 U.S.C. § 2605(e) (2012).

Prior to the 2010 amendments, the mortgage servicer was required to provide the borrower with a written response acknowledging receipt of the correspondence within twenty days (excluding legal public holidays, Saturday, and Sundays), unless "the action requested is taken within such period."  12 U.S.C. § 2605(e)(2) (2006).  The Dodd-Frank Act amendments

-14-

extended the time for acknowledgement to thirty days (excluding legal public holidays, Saturday, and Sundays).

And, prior to the Dodd-Frank amendments, a mortgage servicer had 60 days (excluding legal public holidays, Saturdays, and Sundays) to take action on the inquiry.  12 U.S.C. § 2605(e)(2) (2006).  Following the Dodd-Frank amendments, mortgage servicers have only thirty days (excluding public holidays, Saturdays, and Sundays) to take action on the inquiry. 12 U.S.C. § 2605(e)(2) (2016).  However, the Dodd-Frank amendments provided that mortgage servicers can obtain a fifteen-day extension "if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding."  *Id.*

A servicer's failure to respond to a QWR, as required, entitles a borrower to recover actual damages as well as statutory damages in cases showing a "pattern or practice   of noncompliance."   12 U.S.C. § 2605(f).   The Dodd-Frank Act increased the maximum award of statutory damages for a "pattern or practice" of violation from $1,000 to $2,000. *See* Pub. L. 111–203, § 1463(b)(1), 124 Stat. 1376, 2184.

"In order to state a claim for a violation of RESPA's QWR provisions, the borrower must demonstrate (1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages."  *IAR Family Trust v. Suntrust Mortgage, Inc.*, 3:13-CV-418-GCM, 2014 WL 1432378, at *3 (W.D.N.C. Apr. 14, 2014); *see also Bourdelais v. JPMorgan Chase Bank, N.A.*, 3:10-CV-670, 2012 WL 5404084 (E.D. Va. Nov. 5, 2012).

### 2.  The First and Second Letters

Plaintiff alleges that the loan servicer (Countrywide) failed to respond to the First Letter, which she claims was sent in either 2007 or 2008.  *See* ECF 67-1.  And, she claims that the loan

servicer (Countrywide) also failed to respond to the Second Letter, which was sent on December 22, 2008.  ECF 20, ¶¶ 1, 13, 41; *see* ECF 2-3, ECF 20, Ex. B.

BOA contends that summary judgment is appropriate as to both letters, arguing that the claims are time-barred.  ECF 65-1 at 15.  In her Opposition, McCray states:

> If there is a "three-year statute of limitations from the date of the violation" how is the "date of the violation determined?"  For instance Plaintiff sent a QWR in with the first signed modification in 2008.  Then another QWR Exhibit B was sent in 2008 then another one sent in Exhibit C in 2010 then another one Exhibit A2 sent in 2012.  How do we determine the date of the actual violation to determine that the 3 year statute of limitations are up?  If we use the year of each QWR for example, 2008 then how do we determine when the violation occurred?  The law does not explain or detail how to determine when the violation occurred nor how to determine when the three-year statute of limitations has been reached.  Without this valuable information to determine statute of limitations and violations the Defendants cannot claim time barred on the QWR.

Section 2614 of Title 12 of the United States Code is titled: "Jurisdiction of courts; limitations."  It provides, in pertinent part, *id.*:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, *within 3 years in the case of a violation of section 2605 of this title* and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation . . . .  (Emphasis added).[12]

Under § 2614, the limitations period "runs from the date of the alleged RESPA violation . . . ."  *Merritt v. Countrywide Financial Corp.*, 759 F.3d 1023, 1040 (9th Cir. 2014).  Here, plaintiff's claims arise under the "[d]uty of [a] loan servicer to respond to borrower inquiries", which is codified at 12 U.S.C. § 2605(e)(2).  Thus, pursuant to 12 U.S.C. § 2614, plaintiff had three years to initiate the lawsuit, dating from the end of the period in which the

---

[12] Section 2614 was amended in 2011.  Those amendments are not relevant to the statute of limitations as it applies to actions brought by private individuals.  *Compare* 12 U.S.C. § 2614 (2016) *with* 12 U.S.C. § 2614 (1996-2011).

mortgage servicer was to respond to each particular QWR.  *See* 12 U.S.C. § 2605(e)(2); *see also Sykes v. RBS Citizens, N.A.*, 2 F. Supp. 3d 128, 142 (D.N.H. 2014) (observing that claims under 12 U.S.C. § 2605(e)(2) accrue sixty business days after a mortgage servicer receives a QWR).

In my view, summary judgment is appropriate as to both the First Letter and the Second Letter, because the claims are time-barred under RESPA's statute of limitations.  With respect to the First Letter, there is no documentary evidence of the letter, its contents, or when it was sent.  *See* ECF 65-2 at 11-12; ECF 67-1 at 4.  At her deposition, McCray was asked, with reference to the paragraph in the Amended Complaint describing the First Letter:  "What letter are you referring to?"  ECF 67-1 at 4.  McCray responded: "So I don't have the letter.  That was back in early 2007, 2008; I'm not quite sure.  So unfortunately, that's the one letter I do not have."  *Id.*

In her Amended Complaint, McCray asserted that she returned the First Letter with the forms for the First Modification.  ECF 20, ¶ 13.  The forms for the First Modification state that they were due "no later than January 24, 2008."  ECF 2-11 at 2.  Notably, there is no indication in the record that McCray sent the First Letter after 2008.

As indicated, from September 30, 1996 to July 20, 2011, RESPA required a loan servicer to respond to (or take the action requested by) a QWR within sixty days of receiving the QWR (excluding legal public holidays, Saturdays, and Sundays).  12 U.S.C. § 2605(e)(2).  Construing the evidence in the light most favorable to McCray, and even assuming that the First Letter was not sent until December 31, 2008, it almost certainly would have arrived by mid-January 2009.[13]

---

[13] The U.S. Postal Service provides that first class mail should be delivered within three days of mailing.  *See* U.S. Postal Service, First Class Mail, *available at*: https://www.usps.com/ship/first-class-mail.htm; *see also Barger v. Plant*, No. 15-00790-VBF-M, 2015 WL 1926217, at *1 (C.D. Cal. Apr. 27, 2015) ("U.S. Postal Service regulations express a general expectation that first-class mail will typically arrive at its destination within the United States within three mailing days. . . .").  But, out of an abundance of caution, I have assumed that the First Letter could have arrived as late as two weeks after it was mailed.

Assuming that BOA or Countrywide received the First Letter as late as January 15, 2009, the servicer would have had until mid April 2009 to respond to it or take action on it.[14]  Thus, McCray's claim that Countrywide failed to respond to the QWR most certainly would have accrued in April 2009.  12 U.S.C. § 2614; *see also Sykes*, 2 F. Supp. 3d at 142.

Accordingly, under 12 U.S.C. § 2614, McCray would have had until the middle of April 2012 to bring suit based on the First Letter.  But, plaintiff did not initiate the lawsuit until June 2014, more than two years after the expiration of limitations.  *See* 12 U.S.C. § 2614. Accordingly, summary judgment is appropriate as to McCray's RESPA claim with respect to the First Letter.

McCray also contends that Countrywide failed to respond to the Second Letter, dated December 22, 2008.  ECF 20, ¶ 41.  McCray stated that she sent the Second Letter (ECF 20, Ex. B; ECF 2-3) to Countrywide, along with the Second Modification.  *See* ECF 65-2 at 5 ("I sent [the Second Letter] in with the loan modification agreement . . . .  It was in the same envelope."). Notably, the Second Modification provided: "Return the signed documents to us in the pre-paid FedEx envelope no later than December 31, 2008 in order for the enclosed modification to take effect."  ECF 20, Ex. G; ECF 2-12.

Assuming that the servicer received the Second Letter on December 31, 2008, the servicer would have been required to respond to the QWR by March 30, 2009.[15]  Thus, the cause of action under 28 U.S.C. § 1605(e)(2) relating to the Second Letter would have accrued by April 2009.  However, as indicated, McCray did not initiate suit until July 31, 2014, more than

---

[14] There were twenty-six weekend days and two public holidays during the sixty-day period following January 14, 2009.

[15] There were 26 weekend days and three public holidays during the sixty-day period following December 31, 2008.

two years after the expiration of the statute of limitations.  Accordingly, summary judgment is appropriate as to McCray's claim with respect to the Second Letter.

Additionally, with respect to plaintiff's claims as to the First Letter and the Second Letter, McCray does not argue for equitable tolling, nor does she suggest any basis to toll the statute of limitations.  *See* ECF 66; *cf United States v. Wong*, ___ U.S. ___, 135 S.Ct. 1625, 1360 (2015) ("[T]ime bars in suits between private parties are presumptively subject to equitable tolling.") (emphasis omitted).[16]  According to the Fourth Circuit, "[p]rinciples of equitable tolling do not extend to garden variety claims of excusable neglect."  *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).  The doctrine is used "only sparingly," *Irwin*, 498 U.S. at 96, in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result."  *Harris v. Hutchinson*, 209 F.3d 235, 330 (4th Cir. 2000).  In my review of the Amended Complaint and McCray's Opposition to the Motion, I see no extraordinary factors that would warrant the application of tolling in this case.

In sum, there is no dispute of material fact that McCray's RESPA claims arising out of the First Letter and the Second Letter are time-barred under 15 U.S.C. § 2614.  Accordingly, I shall grant BOA's Motion as to those claims.

_____

[16]  To my knowledge, the Fourth Circuit has not had occasion to consider whether equitable tolling is available under RESPA.  However, many courts of appeals and district courts have held that RESPA's statute of limitations can be tolled.  *See, e.g.*, *Merritt*, 759 F.3d at 1040; *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 504 (3d Cir. 1998); *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1167 (7th Cir. 1997); *see also Minter v. Wells Fargo Bank, N.A.*, 675 F. Supp. 2d 591 (D. Md. 2009) (collecting cases); *Mullinax v. Radian Guaranty, Inc.*, 199 F. Supp. 2d at 326 (same).

### 3.  The Customer Complaint Form

McCray claims that defendant violated RESPA by failing to respond to the CCF that she filed with the Comptroller of the Currency.  ECF 20, ¶ 42; *see* ECF 20, Ex. C; ECF 2-6 (CCF). As noted, in its Motion BOA failed to address McCray's allegation regarding the CCF.  *See* ECF 65-1.  Therefore, by Order of February 13, 2017 (ECF 73), I asked the parties to address the CCF.

In particular, I observed that McCray's RESPA claim pertaining to the CCF appeared to be time-barred under 12 U.S.C. § 2614.  ECF 73 at 2.  And, I noted that, even if the CCF claim were not time-barred, the response to the CCF appeared sufficient to fulfill defendant's obligations under RESPA.  *Id.*  Therefore, I permitted the parties to submit simultaneous briefs on the issue, and to submit simultaneous responses to the initial round of briefs.  *Id.* at 3.  The parties complied.  *See* ECF 82; ECF 83; ECF 85.  And, I gave notice under Fed. R. Civ. P. 56. ECF 73.

"While Fed. R. Civ. P. 56 does not expressly provide that district courts may enter summary judgments *sua sponte,* there can be little doubt that district courts inherently possess that power."  *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  However, this power "is contingent on giving the losing party notice that it must come forward and defend its claim." *U.S. Dev. Corp.*, 873 F.2d at 735; *accord Liobmedia, LLC v. Dataflow/Aska, Inc.*, 349 Fed. App'x 843, 844 (4th Cir. 2009); *Amzura Enterprises, Inc. v. Ratcher*, 18 Fed. App'x 95, 103 (4th Cir. 2001); *Butler v. Windsor*, No. PWG-13-883, 2014 WL 2584468, at *5 (D. Md. June 9, 2014).  The requisite notice was provided in ECF 73.  I shall grant summary judgment in favor of BOA as to McCray's RESPA claim concerning the CCF.

McCray first asserted her claim regarding the CCF in her original Complaint.  ECF 2, ¶¶ 1, 37.  In my Memorandum Opinion (ECF 18) and Order (ECF 19) of June 1, 2015, I dismissed without prejudice McCray's RESPA claim as it pertained to the CCF.  In particular, I observed that the CCF does not "plausibly constitute a QWR."  ECF 18 at 17.  I noted:  "Neither the CCF nor the factual allegations in the Complaint plausibly show or support an inference that BOA actually received the CCF."  *Id.*

In the Amended Complaint, McCray expanded her allegations regarding the CCF (ECF 20, ¶ 42) and included a critical exhibit, *i.e.*, ECF 20, Ex. Z1.  Exhibit Z1 is a letter from BOA dated November 4, 2010, in response to a QWR from McCray ("CCF Response Letter").  The CCF Response Letter stated, *id.*: "Bank of America's Office of the CEO and President acknowledge receipt of your correspondence filed with The Office of the Comptroller of the Currency on September 22, 2010."  The CCF Response Letter also provided explanations as to the calculation of the principal amount, a history of the Loan, and the amount due.  *See id.* at 1-2.

In McCray's supplemental submission of March 3, 2013 (ECF 82), she advances several arguments for equitable tolling.  *See* ECF 82.  First, McCray argues that she timely asserted her rights, but did so in the wrong forum.  ECF 82 at 1-3.  According to McCray, *id.* at 1:

> [P]laintiff was operating under the assumption that the defendants would acknowledge and provide a complete investigation along with written clarification of their findings to resolve plaintiff's errors.  It never crossed plaintiff's mind to bring this matter to court (CFPB informed her she would have to take this matter to court for resolution in 2012) since she tried to partner with defendant to resolve the dispute since 2007.

Moreover, McCray contends that BOA "concealed fraudulent activity from Plaintiff, which prevented her from readily discovering the misconduct."  *Id.* at 3-5.  McCray notes that defendants had several opportunities to respond to nine errors that she identified, and failed to respond to all of them.  *Id.* at 4.  Further, McCray states: "Therefore the defendant's [sic] opted

not to acknowledge/investigate or respond to plaintiffs [sic] concerns at all to conceal their fraudulent behavior." *Id.*

In its response to ECF 82, BOA argues that McCray has not properly asserted her claims for equitable tolling. It adds that, even if she had, those arguments do not support the invocation of tolling. ECF 85.

In my view, BOA is entitled to summary judgment with respect to the CCF claim, based on limitations. *See* 12 U.S.C. § 2614. As noted, claims under 12 U.S.C. § 2605(e), alleging failure of a mortgage servicer to respond sufficiently to a QWR, are subject to a three-year statute of limitations. 12 U.S.C. § 2614. And, as indicated, the CCF Response Letter is dated November 4, 2010. ECF 20, Ex. Z1. Moreover, the CCF Response Letter indicates that the CCF itself was dated September 22, 2010. *Id.*

Viewing the facts in light most favorable to plaintiff, and assuming that BOA did not receive the CCF until November 4, 2010, McCray's RESPA claim would have accrued by February 3, 2011.[17] But, McCray did not file this action until June 23, 2014. ECF 1. Thus, McCray initiated this action at least four months after the expiration of limitations under 12 U.S.C. § 2614.

Nor did McCray assert any arguments for equitable tolling in her Amended Complaint. *See* ECF 20. However, in her response to my Order of February 13, 2017 (ECF 73), McCray advanced several arguments to support her claim for equitable tolling. *See* ECF 82. As indicated, McCray argues that tolling is appropriate because she was diligently attempting to resolve her claims and because defendants fraudulently concealed their RESPA violations. ECF 82.

_____

[17] Sixty days after November 4, 2010, excluding weekends and public holidays, is February 4, 2011.

As to the first ground, case law from other jurisdictions suggests that a federal statute of limitations can be tolled where the plaintiff timely filed her complaint in the wrong forum. *See Donovan v. Trocki*, No. CIV.A. 97-00970, 1998 WL 464911, at *3 (E.D. Pa. Aug. 5, 1998) (citing *School Dist. of Allentown v. Marshall*, 657 F.2d 16, 19-20 (3d Cir. 1981) ("As a matter of equity, the Third Circuit has recognized that statutes of limitations can be tolled for plaintiffs who timely assert their rights mistakenly in the wrong forum."); *Gray v. Zirfas*, No. 416CV02132RBHKDW, 2016 WL 7974109, at *4 (D.S.C. Nov. 22, 2016), *report and recommendation adopted*, No. 4:16-CV-02132-RBH, 2017 WL 345137 (D.S.C. Jan. 24, 2017) ("[T]here is some case law from other jurisdictions recognizing that, under some circumstances, a federal statute of limitation may be equitably tolled while a plaintiff pursues alternate remedies such as a separate state court action or an administrative process . . . .").

Here, McCray pursued her claims through various administrative processes. *See, e.g.*, ECF 20 Ex. C; ECF 2-6. But, McCray never filed her civil complaint in the wrong forum (*i.e.*, a court without jurisdiction over defendant, etc.). Thus, even if tolling for filing a complaint in the wrong forum were available, it would not apply to the facts here.

As to the second ground, McCray seeks tolling based on alleged fraudulent concealment. To invoke tolling on the basis of fraudulent concealment, "a plaintiff must demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995); *accord GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007); *Baehr v. Creig Northrop Team, P.C.*, No. CIV. WDQ-13-0933, 2014 WL 346635, at *4 (D. Md. Jan. 29, 2014).

McCray has not posited any factual allegations showing that BOA concealed facts from her relevant to her claim.  Although McCray may be dissatisfied with BOA's responses (or lack of responses) to her QWRs, McCray has not suggested that BOA concealed that it had failed to respond to her QWRs.  In other words, BOA's failure to respond to the QWRs was the fact giving rise to the cause of action, and McCray makes no argument that BOA in any way misled her to believe that it had in fact responded when it did not do so.  To the contrary, McCray would have known if she did not receive a response from BOA.

In view of the foregoing, I shall grant summary judgment as to McCray's claim regarding the CCF, because it was untimely filed and there are no grounds to support equitable tolling.

### 4.  The CFPB Complaint

In her Amended Complaint, McCray reasserts her claim that BOA violated RESPA by failing to respond to the CFPB Complaint.  ECF 20 ¶ 40; *see* ECF 20 Ex. A; ECF 2-1; *cf* ECF 2 ¶ 1. [18]  In the Motion, BOA points out that, in my Memorandum Opinion (ECF 18) and Order (ECF 19) of June 1, 2015, I dismissed, with prejudice, McCray's RESPA claim regarding the CFPB Complaint.  ECF 65-1 at 7-8.  In her Opposition, McCray did not contest or respond to this assertion.  *See* ECF 66.

In my Memorandum Opinion, I observed, ECF 18 at 19-20:

> Although BOA did not make the "corrections" McCray requested in the CFPB Complaint, it is clear that BOA did investigate McCray's concerns and, as required by § 2605(e)(2)(B)(i), provided "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer."  *See* BOA Response, ECF 2-7 at 1, 3-4; *Boardley*, 39 F. Supp. 3d at 702 (finding plaintiffs failed to state a claim where allegations showed defendants "reviewed their records" and provided a written explanation with the reasons why defendants believed their calculations were correct).  Therefore, I agree with defendant that Exhibit C2 to the Complaint shows BOA

---

[18]  In its Motion, BOA erroneously cites ECF 20 Ex. C as the CFPB Complaint.  That document is the Customer Complaint Form submitted to the Comptroller of the Currency.

satisfied its obligation under RESPA to respond to the QWR included as Exhibit A to the Complaint.

Accordingly, McCray has failed to state a claim for violation of RESPA with respect to the QWR included as Exhibit A to the Complaint, because the allegations show that BOA responded.  It follows that McCray's RESPA claim with respect to Exhibit A is subject to dismissal, with prejudice.

Because the RESPA claim arising out of the CFPB Complaint was previously dismissed, with prejudice (ECF 19), it could not be reasserted in the Amended Complaint.  Accordingly, I shall grant summary judgment to BOA as to this claim.

### 5.   24 C.F.R. § 3500.17

In her Amended Complaint, McCray appears to assert a claim under 24 C.F.R. § 3500.17. ECF 20 ¶ 7.  The Amended Complaint states, in pertinent part, *id.*:

According to 24 CFR 3500.17- "Escrow accounts (2) Escrow analysis at creation of escrow account. Before establishing an escrow account, the servicer must conduct an escrow account analysis to determine the amount the borrower must deposit into the escrow account (subject to the limitations of paragraph (c)(1)(i) of this section), and the amount of the borrower's periodic payments into the escrow account (subject to the limitations of paragraph (c)(1)(ii) of this section) . . . .  Plaintiff never received an escrow analysis before the defendant charged these fees to a non-existent escrow account.

In the Motion, BOA asserts that it "is unaware of any regulation with this citation."  ECF 65-1 at 3 n. 3.  It posits: "Plaintiff meant to cite to 12. C.F.R. 1024.17(k)(1), which addresses escrow accounts."  *Id.*  BOA argues that summary judgment is proper as to McCray's claim because 12 C.F.R. § 1024.17(k)(1) "did not become effective until January 10, 2014" and does not apply retroactively.  *Id.* at 16.

Although it is true that there is no longer a regulation at 24 C.F.R. § 3500.17, a review of the regulation's history reveals that, during the periods relevant to plaintiff's claims, 24 C.F.R. § 3500.17 was in effect, titled "Escrow accounts."  It was merely recodified at 12 C.F.R. § 1024.17 in 2014, following the implementation of the Dodd-Frank Act.  Under the Dodd-Frank Act,

responsibility for the administration, enforcement, and implementation of RESPA was transferred from the Department of Housing and Urban Development ("HUD") to the CFPB. *See* 79 F.R. 34224-01 (June 16, 2014).   The CFPB "substantially duplicate[d]" HUD's regulations, reenacting them at 12 C.F.R part 1024.  *See* 76 F.R. 78978-01 (Dec. 20, 2011).  A review of the regulations reveals that 12 C.F.R. § 1024.17(k)(1) is identical to the pre-2014 regulation enacted at 24 C.F.R. § 3500.17(k)(1).

In her Amended Complaint (ECF 20, ¶ 7), plaintiff cites 24 C.F.R. § 3500.17(c)(2), which provides, *id.*:

> Escrow analysis at creation of escrow account. Before establishing an escrow account, the servicer must conduct an escrow account analysis to determine the amount the borrower must deposit into the escrow account (subject to the limitations of paragraph (c)(1)(i) of this section), and the amount of the borrower's periodic payments into the escrow account (subject to the limitations of paragraph (c)(1)(ii) of this section). In conducting the escrow account analysis, the servicer must estimate the disbursement amounts according to paragraph (c)(7) of this section. Pursuant to paragraph (k) of this section, the servicer must use a date on or before the deadline to avoid a penalty as the disbursement date for the escrow item and comply with any other requirements of paragraph (k) of this section. Upon completing the initial escrow account analysis, the servicer must prepare and deliver an initial escrow account statement to the borrower, as set forth in paragraph (g) of this section. The servicer must use the escrow account analysis to determine whether a surplus, shortage, or deficiency exists and must make any adjustments to the account pursuant to paragraph (f) of this section.

Notably, there is no private right of action to enforce violations of 24 C.F.R. § 3500.17. *See Au v. Republic State Mortg. Co.*, 948 F. Supp. 2d 1086, 1101 (D. Haw. 2013) ("Nor is there a private right of action under 24 C.F.R. § 3500.17 . . . .").  This is because 24 C.F.R. § 3500.17 was promulgated under 12 U.S.C. § 2609, which is a part of § 10 of RESPA, and Congress did not create a private right of action to enforce § 10 of RESPA.  *See Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1358 (11th Cir. 2006) (concluding that there is no private right of action to challenge a violation of 24 C.F.R. § 3500.17 because it was promulgated under § 10 of RESPA);

*see also State of La. v. Litton Mortg. Co.*, 50 F.3d 1298, 1304 (5th Cir. 1995) ("Congress did not intend to create a private right of action under Section 10 of RESPA."); *Allison v. Liberty Sav.*, 695 F.2d 1086, 1087 (7th Cir. 1982) ("[W]e hold that there is no private right of action under § 10 of RESPA.").

In the Motion, BOA failed to put McCray on notice that summary judgment could be entered against her as to her claim under 24 C.F.R. § 3500.17, on the ground that there is no private right of action to enforce that regulation.  However, in ECF 73, discussed earlier, I informed the parties that I would consider summary judgment on this basis.  *Id.* at 2-3; *see U.S. Dev. Corp.*, 873 F.2d at 735.  As indicated, I gave McCray and BOA an opportunity to respond to the issues identified in ECF 73.  *Id.* at 3.

In her response, McCray contends that "there is a private right of action under 12 CFR 1024.17(k)(l). There are no available cases that has enforced this law however CFPB allows the law to be enforced."  ECF 82 at 8.  In its response, BOA points out that although there is a private right of action to some parts of RESPA, there is no private right of action under 24 C.F.R. § 3500.17, for the reasons stated by the Court in its Order of February 13, 2017 (ECF 72).  ECF 85 at 9.

In view of the foregoing, BOA is entitled to summary judgment with respect to McCray's claim under 24 C.F.R.§ 3500.17.  As indicated, 24 C.F.R. § 3500 was promulgated under § 10 of RESPA, which was codified as 12 U.S.C. § 2609, *see* P.L. 93–533, 88 Stat. 1724 (Dec. 22, 1974), for which there is no private right of action.  *See, e.g.*, *Hardy*, 449 F.3d at 1358. Accordingly, because Congress did not create a private right of action under which McCray could challenge a violation of 24 C.F.R. § 3500.17, summary judgment in favor of BOA is appropriate.

## B.  The CFPA Claim

McCray may have asserted a claim under the CFPA.  The CFPA was passed "in the wake of the 2008 financial crisis . . . to address the regulatory system's failure to protect consumers of financial services."  *CFPB v. The Mortgage Law Group, LLP*, 157 F. Supp. 3d 813 (W.D. Wisc. 2016).

In particular, McCray asserts in her Amended Complaint, ECF 20, ¶ 2:

> In the course of Plaintiff's loan the Defendant has engaged in the following unfair and deceptive practices during the servicing of Plaintiffs loan: Paragraphs 3-37 displays unfair and deceptive loan servicing (accounting practices) that are prohibited under consumer laws with respect to mortgage servicing, 12 U.S. Code§§ 5531 and 5536(a).

Section 5531 of Title 12 of the U.S. Code states, in pertinent part (emphasis added):

> The *Bureau* may take any action authorized under part E to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service.

And, 12 U.S.C. § 5536(a) provides:

> It shall be unlawful for--
>
> > (1) any covered person or service provider--
> >
> > > (A) to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law; or
> > >
> > > (B) to engage in any unfair, deceptive, or abusive act or practice;
> >
> > (2) any covered person or service provider to fail or refuse, as required by Federal consumer financial law, or any rule or order issued by the Bureau thereunder--
> >
> > > (A) to permit access to or copying of records;
> > >
> > > (B) to establish or maintain records; or
> > >
> > > (C) to make reports or provide information to the Bureau; or
> >
> > (3) any person to knowingly or recklessly provide substantial assistance to a covered person or service provider in violation of the provisions

of section 5531 of this title, or any rule or order issued thereunder, and notwithstanding any provision of this title, the provider of such substantial assistance shall be deemed to be in violation of that section to the same extent as the person to whom such assistance is provided.

BOA argues that it is entitled to summary judgment because there is no private right of action under the CFPA.  ECF 65-1 at 16.  According to BOA, "litigation and enforcement powers [under the CFPA] are specifically regulated to the CFPB." *Id.*    McCray    did    not respond to these arguments in her Opposition. *See* ECF 66.

In my view, summary judgment is appropriate as to McCray's claim under the CFPA because there is no private right to enforce such an action.

Section 5564(a) of 12 U.S.C. is titled "Litigation authority."  It provides, *id.* (emphasis added):

> If any person violates a Federal consumer financial law, the *Bureau* may, subject to sections 5514, 5515, and 5516 of this title, commence a civil action against such person to impose a civil penalty or to seek all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law.

Moreover, various courts have concluded that there is no private right of action to enforce 12 U.S.C. §§ 5531 and 5536(a).  *See, e.g., Diaz v. Argon Agency Inc.*, No. CV 15-00451 JMS-BMK, 2015 WL 7737317 at *3 (D. Haw. Nov. 30, 2015) ("[T]here is no private right of action under [§ 5531 or § 5536] of the CFPA, which merely outline duties, authorities and enforcement powers of the CFPB."); *see also Kalisz v. Am. Express Centurion Bank*, No. 1:15-CV-01578, 2016 WL 1367169, at *2 (E.D. Va. Apr. 5, 2016) ("The CFPA does not provide a private right of action. Section 5564, reserves litigation power to the Consumer Financial Protection Bureau to enforce any provision of Title 12."); *Johnson v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*, No. 3:13-CV-678-MOC-DSC, 2014 WL 4384023, at *5 (W.D.N.C. Aug. 5, 2014), *report and*

*recommendation adopted*, No. 3:13-CV-00678-MOC-DS, 2014 WL 4384024 (W.D.N.C. Sept. 3, 2014) ("[T]here is no private right of action under the CFPA.").

Therefore, McCray cannot maintain an action under 12 U.S.C. §§ 5531 or 5536(a).

## IV.    Conclusion

In light of the foregoing, I shall grant BOA's Motion for Summary Judgment as to McCray's RESPA claims regarding the First Letter and the Second Letter, because those claims are barred by RESPA's statute of limitations.  Similarly, I shall grant summary judgment in favor of BOA as to McCray's RESPA claim regarding the CCF, because that claim is barred by RESPA's statute of limitations.  And, I shall grant BOA's Motion for Summary Judgment as to McCray's claim under the CFPA, because Congress did not create a private right of action to enforce those provisions.  Similarly, I shall grant summary judgment in favor of BOA as to McCray's claim under 24 C.F.R. § 3500.17(k)(1), because Congress did not create a private right of action to enforce that regulation.  Finally, I shall grant the Motion with respect to McCray's RESPA claim pertaining to the CFPB Complaint, because it was previously dismissed, with prejudice, in ECF 19.

An Order follows, consistent with this Memorandum Opinion.


Date:  4/10/2017                                                    _____/s/_____
                                                                              Ellen L. Hollander
                                                                              United States District Court